1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    DAREN HEATHERLY, et al.,                    Case No.  13-cv-04534-JSC

              Plaintiffs,
8
                                                 **REFERRAL FOR REASSIGNMENT;**
9        v.                                      **REPORT AND RECOMMENDATION**
                                                 **RE: DEFAULT JUDGMENT**
10   PANINI, et al.,
                                                 Re: Dkt. No. 15
              Defendants.
11

12

13         Plaintiffs Daren Heatherly ("Heatherly") and Irma Ramirez ("Ramirez," and together,

14   "Plaintiffs") bring this action alleging that Panini (the "Business"), in San Francisco, California, is

15   operating with architectural access barriers in violation of their civil rights under the Americans

16   with Disabilities Act ("ADA") and California state law.  (*See* Dkt. No. 1.)  Default was entered

17   against Defendants Lada Group, Inc. dba Panini ("Lada Group"), and Thomas P. Wiseau,

18   individually and as Trustee of the Thomas P. Wiseau Revocable Trust dated 12/10/1992

19   ("Wiseau" and all together, "Defendants").[1]  Plaintiffs now move for default judgment against

20   Defendants, seeking: $16,000 in statutory damages, an injunction requiring Defendants to remove

21   the architectural barriers impeding Plaintiffs' access and to meet the requirements of California

22   law and the ADA, and attorneys' fees and costs, including expert fees.  (Dkt. No. 15.)  Because the

23   Court finds this motion suitable for disposition without oral argument pursuant to Civil Local Rule

24   7-1(b), the Court VACATES the hearing previously set for October 8, 2015.  As Defendants have

25   not consented to the jurisdiction of the undersigned magistrate judge, the Court orders that this

26

27   [1] Plaintiffs were told by Lada Group's registered agent for service that West Coast Management is
     the management company controlling and managing the property on which the Business is
28   located.  (Dkt. No. 9 at 2.)  Although Plaintiffs indicated in a Status Update that they would be
     amending their complaint to include West Coast Management, they have not done so.  (*Id.*)

United States District Court
Northern District of California

1    matter be REFERRED to a District Judge and RECOMMENDS that Plaintiffs' motion be

2    GRANTED as set forth below.

3                             **BACKGROUND**

4    **A.**      **Factual Background**

5          Plaintiffs are physically disabled persons who use a wheel chair to travel in public:

6    Heatherly has Multiple Sclerosis and a left hip replacement, and Ramirez has Post-Polio

7    syndrome.  (Dkt. No. 1 ¶ 5.)  Plaintiffs are married and live in Santa Rosa, California,

8    approximately 55.3 miles from the Business.  (*Id.* ¶ 15; Dkt. No. 28 ¶ 5; Dkt. No. 29 ¶ 5.)  The

9    Business is a restaurant in San Francisco, California.  (Dkt. No. 1 ¶ 2.)  Defendants are the owners

10    of the property and operators of the Business, which they organized as a joint venture.  (*Id.* ¶¶ 7-

11    9.)  The Business is a place of public accommodation subject to the requirements of the California

12    Civil Code, the California Health and Safety Code, and the ADA.  (*Id.* ¶ 9.)

13          On three occasions—December 13, 2012, February 28, 2013, and May 23, 2013—

14    Plaintiffs visited the Business to enjoy its food and beverage.  (*Id.* ¶ 15.)  During those visits, the

15    following state and federal law violations impeded Plaintiffs' access to the Business: (1) the

16    Business entrance and restroom doors had excessive door pressure; (2) the Business entrance

17    lacked strike side clearance[2] in which wheelchair users could navigate and open the door, so

18    Plaintiffs would have struggled to enter the Business if the door were not propped open or patrons

19    did not assist them; (3) the service counter was too high, so Ramirez had to sign her credit card in

20    her lap or thigh; (4) the table arrangements impeded access to the unisex bathroom, so Heatherly

21    had to ask for chairs to be moved and for other patrons to shift before he had room to navigate; (5)

22    the restroom door handle used a door knob instead of levered hardware, so Heatherly had to ask

23    for assistance to enter; (6) the unisex restroom lacked adequate clear space, so Plaintiffs needed to

24    use "multiple wheelchair movements" to navigate out of the restroom and, in doing so, they struck

25    the toilet multiple times; (7) the locking mechanism in the bathroom required a turning, twisting,

26

27    [2] The strike side of a door is the edge that swings (*i.e.*, the side that is not hinged): strike side
clearance refers to space on the side of a door in which someone could angle their wheelchair.

28    (*See* Dkt. No. 1 ¶ 21.); *see also* Peter A. Singler, *ADA Accessibility Guide*, Singler Law (last
updated 2004), http://www.singler-law.com/guides/adaclist.html.

and grasping movement to activate, so Heatherly could not lock it; (8) the bathroom soap dispenser was placed too high, so Ramirez had difficulty reaching it; (9) the hand dryer was also placed too high; and (10) the entrance and restroom lacked any International Symbol of Accessibility Signage.  (*Id.* ¶¶ 16-19, 24; Dkt. No. 26 ¶¶ A-H.)

Ramirez sent identical letters to the owner of the building and the manager of the Business on February 4, 2013, almost two months after Plaintiffs' first visit.  The letters described the difficulties Plaintiffs experienced and recommended resources to help the Business become compliant with state and federal access laws.  The letters also requested that the recipient confirm receipt of the letters.  (Dkt. No. 1 ¶ 15, 20; *id.* at 39-40.)[3]

On March 7, 2013, following Plaintiffs' second visit to the Business, Ramirez wrote another letter repeating the same information, this time to the manager of the Business alone. (Dkt. No. 1 ¶ 21; *id.* at 41.)  Defendants neither confirmed receipt of the letters nor responded to Ramirez.  (*Id.* ¶ 21.)

During Plaintiffs' last visit in May 2013, Heatherly did not encounter the same problems on his route to the unisex restroom, as the table and chairs had been moved further away from the restroom door.  (*Id.* ¶ 18.)

On February 26, 2013, Rick Sarantschin, a Certified Accessibility Inspector/Plans Examiner, inspected the Business at Plaintiffs' lawyer's request.  (Dkt. No. 26 ¶¶ 2, 4.)  Mr. Sarantschin observed several of the violations that Plaintiffs had reported.  (*Id.* ¶¶ A-H.)  Mr. Sarantschin last visited the Business on August 25, 2015, and noted that "the *only* remedial repair completed was that a new service counter at a complying height of 34" had been installed."  (*Id.* ¶ 7 (emphasis in original).)

As a result of these difficulties, Plaintiffs were deprived of their civil rights and the full and equal opportunities afforded to non-disabled persons to independently enjoy and participate in the opportunities, goods and services.  (Dkt. No. 1 ¶¶ 26, 28, 35-36.)  Plaintiffs also suffered an array of physical and emotional discomforts from the experience.  (*Id.* ¶¶ 24, 27-29, 37, 49.)  Plaintiffs

---

[3] Page numbers throughout refer to those that the Court's electronic filing system automatically assigns.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  found it would be a futile gesture to try and overcome the Business's architectural barriers and

2  were deterred from returning after May 23, 2013.  (*Id.* ¶¶ 25, 27.)

3      Plaintiffs allege that Defendants operated the Business with knowledge that the barriers

4  described above effectively denied full and equal access to persons with disabilities and that their

5  refusal to respond to or correct complaints about their denial of handicap access constitutes

6  negligence per se or neglect, as well as actual and implied malice toward each plaintiff and a

7  willful and conscious disregard for the rights and safety of similarly situated persons.  (*Id.* ¶¶ 30-

8  33, 46.)  Simple modifications to construct barrier-free handicapped access will eliminate the

9  disparate and discriminatory treatment of persons with disabilities.  (*Id.* ¶ 56.)

10  **B.    Procedural History**

11      Plaintiffs initiated this action on October 1, 2013.  (Dkt. No. 1.)  In the Complaint,

12  Plaintiffs bring claims for violations of the ADA, 42 U.S.C. § 12101-12101, 12181-12183, 12201;

13  California Health and Safety Code Sections 19955-19956; California's Civil Rights Act, Cal. Civ.

14  Code §§ 54, 54.1, and 54.3; and the California Unruh Civil Rights Act, Cal. Civ. Code § 51, 51.5.

15  The Complaint seeks money damages, including no less than $4,000 in statutory damages for

16  three occasions of denied access and each occasion of deterrence, and treble damages pursuant to

17  the ADA, California Civil Codes, and California Health and Safety Code, as well as injunctive

18  relief, attorneys' fees and costs, and expert costs.

19      As discussed in greater detail below, Plaintiffs properly delivered the summons and

20  Complaint to Defendants.  Defendants never made an appearance in this matter and failed to

21  answer or otherwise respond to the Complaint within the time prescribed by the Federal Rules of

22  Civil Procedure, so the Clerk of Court entered Defendants' default on April 8, 2014, as to Lada

23  Group, and March 9, 2015, as to Wiseau.  (Dkt. Nos. 7, 12.)

24      On July 31, 2015, the Court ordered Plaintiffs to file a motion for default judgment within

25  30 days or face dismissal of the case.  (Dkt. No. 13.)  Plaintiffs filed the instant motion for default

26  judgment on August 27, 2015.  (Dkt. No. 15.)  The same day, Plaintiffs filed a stipulation to limit

27  their statutory damages to $8,000 each for one occasion of denied access—instead of three

28  occasions—and one deterrence occasion.  (Dkt. No. 16 at 32; Dkt. No. 27 at 2.)  Plaintiffs also

1   seek attorney's fees and costs, including expert's fees, as well as injunctive relief to require the

2   Business to remove the remaining architectural barriers and to make its facilities readily accessible

3   and usable by individuals with disabilities.  (*Id.*; *id.* at 24.)  To date, Defendants have failed to

4   appear, respond to the motion, or otherwise defend themselves in this action .

5                                   **DISCUSSION**

6   **A.       Service and Jurisdiction**

7                1.      *Service*

8        "Courts must determine the adequacy of service of process on a motion for default

9   judgment."  *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1019 (N.D. Cal. 2015) (citation

10  omitted).  Federal Rule of Civil Procedure 4(e) provides that service in accordance with California

11  law is proper.  *See* Fed. R. Civ. P. 4(e)(1) (allowing for service "following state law for serving a

12  summons in an action brought in courts of general jurisdiction in the state where the district court

13  is located or where service is made"); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of

14  process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual").

15  Under California law, "[a] summons may be served by personal delivery of a copy of the

16  summons and of the complaint to the person to be served."  Cal. Code Civ. Proc. § 415.10.  A

17  summons can be served on a corporation by delivering a copy of the summons and of the

18  complaint to the person designated as agent for service of process.  *Id.* § 416.10(a).  A summons

19  can also be served on a corporation by delivering a copy of the summons and complaint to the

20  president, chief executive officer, or other head of the corporation.  *Id.* § 416.10(b).

21        Here, rather than personally serving Defendants, Plaintiffs resorted to substitute service

22  pursuant to Section 415.20.  The rules on substitute service differ depending on whether the

23  defendant being served is an individual or an entity.  *Compare id.* § 415.20(a) (substitute service

24  on entity and corporate defendants), *with id.* § 415.20(b) (substitute service on individuals).

25                a.      Substitute Service on Corporate Defendant Lada Group

26        In California, a summons can be served on a corporate defendant by delivering copies of

27  the summons and complaint to the designated agent for service of process.  Cal. Code Civ. Proc.

28  § 416.10(a).  In lieu of personal delivery, substitute service may be made on a corporation by: (1)

     leaving a copy of the summons and complaint during usual office hours at the service agent's

United States District Court
Northern District of California

5

office with a person apparently in charge of the office and at least 18 years old; (2) informing the recipient of the contents of the documents; and (3) later sending via first-class mail a copy of the summons and complaint to the service agent at the location where the summons and complaint were left.  *Id.* § 415.20(a).  Such service is deemed complete on the tenth day after mailing.  *Id.*

Here, Plaintiffs' process servers made three visits to the address for Lada Group's agent for service, Michael Musleh, in order to affect personal service of the Summons and Complaint.  (Dkt. No. 5-2 at 3.)  On the fourth visit, substitute service was made with "Jane Doe," described as a "Competent Member of the Household."  (Dkt. No. 5-2 at 4.).  Plaintiffs mailed copies of the documents three days later.  (*Id.*)

Although the process server's documents designated the agent's address as a Business, substitute service was made to a "Competent Member of the *Household*"—normally the recipient for service on an individual, not a business.  (*Id.* (emphasis added).)  Despite this discrepancy, it is clear that Mr. Musleh actually received the notice, as he subsequently spoke with Defendants regarding Wiseau's whereabouts and settlement.  (Dkt. No. 9 at 2; Dkt. No. 34-6 at 4.)  Because actual notice was received, Plaintiffs' substitute service on the Lada Group's agent was proper.  *See Pasadena Medi-Ctr. Assocs. v. Sup. Ct. of L.A. Cnty.*, 9 Cal. 3d 773, 778 (1973) (noting statutory provisions of service "should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant") (internal quotation marks omitted); *see also Produce v. Cal. Harvest Healthy Foods Ranch Mkt.*, No. C-11-04814 DMR, 2012 WL 259575, at *4 (N.D. Cal. Jan. 27, 2012) (same).

   b. Substitute Service on Individual Defendant Wiseau

With respect to service on Wiseau, an individual, a party must first use "reasonable diligence" to personally serve an individual with a copy of the summons and complaint before resorting to substitute service.  Cal. Code Civ. Proc. § 415.20(b).  Having done so, substitute service can be made by: (1) leaving a copy of the summons and complaint at the person's usual place of business, among others, with a person at least 18 years of age and apparently in charge of the place of business; (2) informing the recipient of the contents of the documents; and (3) later sending via first-class mail a copy of the summons and complaint to the location where the summons and complaint were left.  *Id.*  As with substitute service for corporate entities, substitute

service is deemed complete on the tenth day after mailing.  *Id.*  Substitute service in accordance with the requirements of section 415.20(b) "satisfies the constitutional requirements of service reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard."  *Korea Exch. Bank v. Yang*, 200 Cal. App. 3d 1471, 1474(1988) (internal quotation marks omitted).

Here, Plaintiffs' process servers first attempted to serve Wiseau by making four visits to an unnamed San Francisco business; however, both an employee and the business owner's brother informed the process servers that they did not know Wiseau.  (Dkt. No. 9-1 at 2.)  Plaintiffs' process servers then made more than fifteen unsuccessful visits to Wiseau's home[4] before learning he might now be found in Los Angeles.  (*See* Dkt. Nos. 9, 9-1.)  These efforts spanned six months, from October 2013 to April 2014.  (*Id.* at 14.)  Plaintiffs' process servers then began to look for Wiseau in Los Angeles and as of September 2014—nearly a year after the complaint was filed—they still had not located him.  (Dkt. No. 9 at 2.)  Then, in early November 2014, process servers made two visits to a business located at 5566 West Pico Boulevard to no avail.  (Dkt. No. 11-2 at 3.)  On the third visit, "the person in charge of the business" told the process server that Wiseau was not in.  (Dkt. No. 11-2 at 3.)  Plaintiffs' process server then made substitute service on Byron Smith, a "[p]erson in charge at least 18 years of age apparently in charge of the office."  (*Id.* at 3-4.)  Copies of the documents were mailed two days later.  (*Id.* at 4.)  Plaintiffs subsequently indicated their belief that after service, Wiseau vacated the premises.  (Dkt. No. 16 at 2.)

"Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made.")  *See Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988).  "Reasonable diligence may [also] include any other method 'reasonably calculated to provide the defendant with actual notice of the action.'"  *G&G Closed Circuit Events, LLC v. Saddeldin*, No. 1:10-cv-00062-AWI-SKO, 2014 WL 631613, at *6 (E.D. Cal. 2014).  Plaintiffs have exerted more than reasonable diligence in their efforts to serve Wiseau, searching for more than a year across three properties.  Although the

---

[4] During the process server's last visit, a tenant in the building indicated that the process server had the wrong address.  (Dkt. No. 9-1 at 14.)  However, "Wiseau" was the name on the intercom outside the building.  (*Id.* at 11.)  Further, the home address where service was attempted corresponds to the address listed for Wiseau on his ownership documents for the Business.  (Dkt. No. 26 at 11.)

United States District Court
Northern District of California

documents do not define Wiseau's relationship to the business in Los Angeles, the person in charge of the business recognized Wiseau when asked by the process server whether Wiseau was there that day.  (*See* Dkt. No. 11-2 at 3.)  Under the circumstances presented, the Court concludes that Plaintiffs' substitute service at that business address was sufficient.  *Cf. Saddeldin*, 2014 WL 631613, at *3 (granting motion to vacate default judgment against defendant where plaintiff was not "reasonably diligent" in effort to personally serve defendant before undertaking substituted service at what it believed to be defendant's "usual place of business").

Accordingly, the Court finds that service of process was proper in this case as to both Defendants.

### 2. *Jurisdiction*

On a motion for default judgment, the court also has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Although defects in personal jurisdiction are a defense "that must [generally] be asserted or waived by a party," a court considering a motion for default judgment "may dismiss the action or a party *sua sponte* for lack of personal jurisdiction[.]"  *McComb v. Vejar*, No. 2:14-CV-00941-RSWL-E, 2014 WL 5494017, at *2 (C.D. Cal. Oct. 28, 2014).  Here, the Court is satisfied that it has jurisdiction over Defendants.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiffs' claims arise in part from violations of federal law; specifically, the ADA.  As to Plaintiffs' state law claims under the Unruh Act and request for injunctive relief under California Health and Safety Code Section 19995, the Court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

With respect to personal jurisdiction over the Lada Group, "[t]here is general personal jurisdiction over a party who is physically present in the state whether or not such presence is related to the claim asserted.  In general, a corporation is deemed to be present in a state in which it is incorporated or in which it has its principal place of business."  *Murphy v. Am. Gen. Life Ins. Co.*, No. ED CV14-00486 JAK, 2015 WL 4379834, at *7 (C.D. Cal. July 15, 2015) (internal citations omitted).  Lada Group's location and principal place of business is 1457 Haight Street, San Francisco, California.  (Dkt. No. 1 ¶ 2.)  The Court may therefore exercise personal jurisdiction over the Lada Group.

With respect to Wiseau, the Court may exercise personal jurisdiction over individual parties based on in-state service of process. *Burnham v. Super. Ct. Cal.*, 495 U.S. 604, 628 (1990) (plurality opinion) (finding Due Process did "not prohibit California courts from exercising jurisdiction over [a party] based on in-state service of process"); *see also McComb*, 2014 WL 5494017, at *2-3 (C.D. Cal. Oct. 28, 2014) (finding personal jurisdiction over individual defendant served via substitute service at his business in California). Plaintiffs have not alleged the residence, domicile, or citizenship of Wiseau. (*See* Dkt. No. 1.) Nonetheless, Plaintiffs have met the requirements for proper substituted service, as discussed above, and the Court may exercise personal jurisdiction over Wiseau on that basis. Having found this basis for jurisdiction, the Court need not address alternative means.

**B.      Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Courts consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the complaint related to liability are deemed to have been admitted by the non-defaulting party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Allegations regarding damages, however, are not deemed admitted; to that end, the Court has the discretion to consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Shanghai Automation Instrument Co.. v. Kuei,* 194 F. Supp. 2d 995, 1000, 1010 (N.D. Cal. 2001) (citing *TeleVideo Sys., Inc.,* 826 F.2d at 917).

The majority of the *Eitel* factors support default judgment in this case.

1.      *Possibility of Prejudice*

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default judgment is not entered.  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).  Here, Plaintiffs would suffer prejudice if default judgment were not entered because they would be left without any other course of action to recover the value of their loss.  "Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor." *Willamette Green Innovation Ctr. v. Quartis Capital Partners*, No. 13-cv-00848-JCS, 2014 WL 5281039, at *6 (N.D. Cal. Jan. 21, 2014) (citations omitted).  Other courts have found that the possibility of prejudice weighs in favor of default in situations where, as here, plaintiffs seek relief under the ADA and state law based on access barriers at a place of public accommodation and the defendants have been unwilling to cooperate with requests to remove the barriers or to defend in the action.  *See, e.g.*, *Heatherly v. GD Liquor & Food*, No. 14-cv-03458-RS, 2015 WL 4967255, at *4 (N.D. Cal. Aug. 20, 2015); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  Mr. Sarantschin avers that as of August 2015 the Business had repaired one of the violations complained of in Ramirez's letters and the instant Complaint—specifically, the service counter now complies with height requirements.  (Dkt. No. 26 ¶ 7.)  While this indicates some effort by the Business to remove a complained-of barrier, Plaintiffs' prejudice persists given that Defendants appear to have taken no effort to correct the lion's share of the violations.

       2.    *Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint*

The second and third *Eitel* factors consider the substantive merits of the plaintiff's claims and the sufficiency of the pleadings to support those claims.  *See PepsiCo, Inc.*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  Here, although the filings indicate that some contact occurred between Lada Group's registered agent and Plaintiffs, Defendants neither answered the Complaint nor made an appearance in this case.  Accordingly, the Court accepts as true Plaintiffs' well-pleaded allegations regarding liability.  *See TeleVideo Sys.*, 826 F.2d at 917; Fed. R. Civ. P. 8(b)(6).  Nevertheless, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  For that reason, default does not automatically entitle a plaintiff to judgment.  Instead, default may be inappropriate under this second *Eitel* factor where the court

United States District Court
Northern District of California

1    determines that no justifiable claim has been alleged.  *Draper v. Coombs*, 792 F.2d 915, 924 (9th

2    Cir. 1986).

3          As mentioned, Plaintiffs' Complaint pleads causes of action for violation of the ADA, the

4    Unruh Civil Rights Act, the California Disabled Persons Act, and the California Health and Safety

5    Code.  Their motion for default judgment addresses only the claims for violation of the ADA, the

6    Unruh Act, and the California Health and Safety Code; accordingly, the Court evaluates only these

7    three claims.

8          a.    *Discrimination under Title III of the ADA*

9          Title III of the ADA prohibits discrimination in public accommodations.  It provides that

10   "[n]o individual shall be discriminated against on the basis of disability in the full and equal

11   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

12   place of public accommodation by any person who owns, leases (or leases to), or operates a place

13   of public accommodation."  42 U.S.C. § 12182(a).  Plaintiffs allege that Defendants own and

14   operate the Business as a joint venture.  (Dkt. No. 1 ¶¶ 7-9.)  Defendants are therefore jointly

15   liable for violating the ADA if Plaintiffs show that they suffered discrimination at the location due

16   to their disability.  *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) (finding

17   defendants, landlords and tenants, jointly and severally liable for plaintiffs' fees and costs in ADA

18   violation case).  Discrimination under Title III includes "a failure to remove architectural barriers .

19   . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C.

20   § 12182(b)(2)(A)(iv).  The term "readily achievable" means "easily accomplishable and able to be

21   carried out without much difficulty or expense."  *Id.* § 12181(9).

22         To prevail on a Title III discrimination claim, the plaintiffs must show that (1) they are

23   disabled within the meaning of the ADA; (2) the defendants are private entities that own, lease, or

24   operate a place of public accommodation; and (3) the plaintiffs were denied public

25   accommodations by the defendants because of their disability.  *Molski v. M.J. Cable, Inc.*, 481

26   F.3d 724, 730 (9th Cir. 2007).  In addition, "[t]o succeed on an ADA claim of discrimination on

27   account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the

28   existing facility at the defendant's place of business or property presents an architectural barrier

United States District Court
Northern District of California

11

1    prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Vogel*, 992 F.

2    Supp. 2d at 1008 (citation omitted); *see also Johnson v. Beahm*, No. 2:11-cv-0294-MCE, 2011

3    WL 5508893, at *2 (E.D. Cal. Nov. 8, 2011).

4                           i.  Plaintiffs Have Standing to Bring Their ADA Claim

5            As with all other causes of action, a plaintiff must have Article III standing to bring a claim

6    under the ADA.  To establish Article III standing, a plaintiff must demonstrate that he or she has

7    suffered an injury in fact, that the injury is traceable to the defendant's challenged conduct, and

8    that the injury can be redressed by a favorable decision.  *Hubbard v. Rite Aid Corp.*, 433 F. Supp.

9    2d 1150, 1162 (S.D. Cal. 2006).  Plaintiffs have Article III standing because they allege that they

10   were denied full and equal access to the services of the Business and deterred from seeking those

11   services in the future[5]; this allegation is accepted as true by virtue of Defendants' default.  The

12   Business's architectural barriers were purportedly the cause of the denial of access, and

13   Defendants are alleged to have known of the barriers.  Finally, an award of statutory damages and

14   an injunction would redress Plaintiffs' known injuries.

15           Where a plaintiff seeks injunctive relief, he must also demonstrate a significant possibility

16   of future harm.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir.

17   1996).

18                   In the ADA context, in determining the likelihood that a plaintiff
                     will return to defendant's facility, courts have examined such factors
19                   as (1) the proximity of the place of public accommodation to
                     plaintiff's residence, (2) plaintiff's past patronage of defendant's
20                   business, (3) the definitiveness of plaintiff's plans to return, and (4)
                     the plaintiff's frequency of travel near defendant.
21

22   *Hubbard*, 433 F. Supp. 2d at 1162-63.

23           Here, although the restaurant is nearly 60 miles from Plaintiffs' home, Plaintiffs visited the

24   _____

25   [5] Although the Plaintiffs were never actually prevented from entering the building because of the
     entrance door's excessive pressure or lack of strike side clearance, they still have standing for
26   injunctive relief under the ADA.  The Ninth Circuit has held that "once a plaintiff establishes that
     he encountered a barrier which deterred him from use and enjoyment of the facility . . . the
27   plaintiff was then deemed to have standing to challenge all discovered violations affecting his or
     her disability."  *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 959 (9th Cir. 2011) (citing
28   *Doran v. 7-Eleven*, 524 F.3d 1034, 1043-44 (9th Cir. 2008).  Plaintiffs personally encountered
     other barriers; this gives them standing to challenge the door as well.

United States District Court
Northern District of California

premises three times prior to filing the Complaint.  Plaintiffs have not indicated that they travel frequently to San Francisco or that they intend to patronize the business at a certain date.  However, Plaintiffs assert that the architectural barriers they faced at the Business have deterred them from returning, and that they "would, could and will return" once it is made accessible.  (Dkt. No. 1 ¶¶ 27, 49.)  This unambiguous intention to return combined with the actual injury suffered by their deterrence is sufficient to establish Plaintiffs' standing.  *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2012) (finding actual or imminent harm sufficiently established when plaintiff had "actual knowledge of the barriers to access" and stated he would patronize the defendant business in the future if it were accessible); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) ("A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.").  Plaintiffs have therefore satisfied the requirements for Article III standing and can seek injunctive relief under the ADA.

ii.  Plaintiffs Have Alleged They are Disabled Within the Meaning of the ADA

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities . . . [,] a record of such an impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities as defined by the ADA include walking or standing.  *Id.* § 12102(2)(A).  Plaintiffs allege that they both use wheelchairs to move about in public as a result of current or past illness.  Accepting these allegations as true, they have established physical impairments that substantially limit the major life activities of walking and standing.  Plaintiffs are therefore disabled within the meaning of the ADA and have satisfied the first element of his Title III discrimination claim.

iii.  Plaintiffs have Shown that the Business is a Place of Public Accommodation

Plaintiffs assert that the Business is a "restaurant" and "a place of public accommodation" that is "open to the general public."  (Dkt. No. 1 ¶¶ 1-2, 9.)  Plaintiffs further allege that Wiseau owns the property on which the Business is located and that he owns and operates the Business as

13

a joint venture with the Lada Group.  (*Id.* ¶¶ 7-8.)  The Business, a "restaurant, bar, or other establishment serving food or drink," is a public accommodation under the ADA.  (Dkt. No. 1 ¶ 9.).  Such facts are sufficient to show that Defendants are individuals who own or operate a place of public accommodation.  *See* 42 U.S.C. § 12181(7)(B); *Vogel*, 992 F. Supp. 2d at 1009.

### iv.  Plaintiffs have Shown that the Business's Architectural Barriers Denied Them Public Accommodations Due to Their Disability

"The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of his physical disability."  *Vogel*, 992 F. Supp. 2d at 1009.  Taking the facts alleged as true, Plaintiffs visited the Business on three occasions.  (Dkt. No. 1 ¶ 15.)  They encountered numerous barriers at the Business for which Plaintiffs seek default judgment and injunctive relief "compelling defendants to remove the architectural barriers" and "to make [the Business] accessible and usable by persons with disabilities."  (Dkt. No. 33 at 3, 24.)  For the reasons discussed below, Plaintiffs have shown that only some of the Business's architectural barriers denied them public accommodations due to their disability.

Plaintiffs initially asserted that the service counter at the Business exceeded the maximum height of 34 inches permitted under the ADA Accessibility Guidelines ("ADAAG").  (Dkt. No. 1 ¶ 24.)  Plaintiffs' expert has since averred that as of August 2015, the Business had lowered the service counter, bringing it into compliance with the ADA.  (Dkt. No. 26 ¶ 7.)  This moots Plaintiffs' claim for injunctive relief under the ADA as to the service counter.[6]  *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA . . . a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim.") (collecting cases).

Plaintiffs also alleged that the doors to the Business's entrance and the unisex restroom both exerted excessive door pressure and lacked any International Accessibility Signage.  (Dkt.

---

[6] As Plaintiffs encountered the counter as a barrier during each of their visits, the counter will still be considered for purposes of statutory damages.

No. 1 ¶ 24.)  Plaintiffs do not cite to any provisions of the ADAAG that indicate these omissions violate applicable law.  Further, Plaintiffs' expert does not list or address these violations in his report.  (*See* Dkt. No. 26.)  Accordingly, the Court finds Plaintiffs have failed to meet their burden to show these barriers violate the ADA.

Plaintiffs' Complaint and expert declaration describe the following other architectural barriers: (1) the front entrance lacks the strike side clearance required by ADAAG § 4.13.6; (2) the dining tables block entrance to the unisex restroom in violation of ADAAG § 4.3 and 4.3.2; (3) and (4) the restroom door's knob and lock require grasping and twisting of the wrist in violation of ADAAG § 4.13.9 and 4.27.4; and (5) the restroom door opens into the clear floor space of the water closet, violating ADAAG § 4.23.2.  (Dkt. No. 26 ¶¶ A-H.)  Plaintiffs allege that these barriers caused them "one, all, or a combination" of emotions, including anxiety, disappointment, and embarrassment, as they endeavored to overcome the barriers during their visits, and that as a result they were denied full and equal access to the accommodation and deterred from visiting the Business again.  (Dkt. No. 1 ¶¶ 24-32.)  Accepting these allegations as true, the Court concludes that Plaintiffs have satisfied the third and fourth elements of a Title III discrimination claim by showing that they encountered the above-mentioned barriers prohibited by the ADA, and that those barriers denied them full and equal access to the Business because of their disability.

### v.  Plaintiffs Have Shown the Removal of These Barriers is Readily Achievable

The applicable DOJ regulations and the ADAAG limit available injunctive relief to removal of barriers only to the extent that removal is readily achievable.  *See* 28 C.F.R. § 36.304(a).  Whether the removal of a barrier is readily achievable involves consideration of four factors:

> A) the nature and cost of the action needed  . . . ; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and

United States District Court
Northern District of California

functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Hubbard*, 433 F. Supp. 2d at 1168 (citing 42 U.S.C. § 12181(9)).

"The Ninth Circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable.  Various district courts throughout the circuit, however, have applied the Tenth Circuit's burden-shifting framework, as articulated in *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001)." *Vogel*, 992 F. Supp. 2d at 1010.  There, the court held that the "plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable[,]" and if the plaintiff makes that showing, the burden shifts to the defendant who "bears the ultimate burden of persuasion regarding his affirmative defense that a suggested method of barrier removal is not readily achievable." *Id.* at 1010-11 (collecting cases in the Ninth Circuit following the Tenth Circuit's burden-shifting framework until the Ninth Circuit addresses this issue); *Vesecky v. Garick, Inc.*, No. 07-1173-PHX, 2008 WL 4446714, at *3 (D. Ariz. Sept. 30, 2008) ("[U]ntil the Ninth Circuit provides . . . specific instruction to the lower courts . . . . [the plaintiff] has the initial burden to produce evidence that removal of the barriers . . . [is] readily achievable.").

Plaintiffs provide little information about the factors relevant to whether the changes they seek are readily achievable and allege no information about the Defendants' financial status or their means and ability to make the changes, which is generally found sufficient to meet this burden of production.  *See. e.g.*, *McComb*, 2014 WL 5494017, at *7 ("Plaintiff alleges . . . that 'failure to remove these barriers was intentional because had the defendants intended any other configuration, they had the means and ability to make the change.  This allegation is sufficient to meet Plaintiff's burden of production." (citation and emphasis omitted)); *Vogel*, 992 F. Supp. 2d 1011 (finding that plaintiff met its burden of production by alleging that defendant knew about the architectural barriers and had the financial resources to remove them without difficulty or expense).

However, Plaintiffs do allege that removal of the barriers complained about is "readily achievable" and that the Defendants knew of the architectural barriers.  (Dkt. No. 1 ¶ 7.)  The

Sarantschin Declaration provides further support for the readily achievable nature of the barriers' removal and Defendants' ability to make certain repairs. For example, Mr. Sarantschin avers that installation of an automatic door to avoid the strike side clearance requirement, rearranging the dining room tables for improved access, changing the restroom door's lock, and changing the direction of the door swing are all readily achievable. (Dkt. No. 26 ¶¶ A, C, E-F.). Though minimal, the allegations in Plaintiffs' Complaint coupled with the Sarantschin Declaration are sufficient to satisfy Plaintiffs' burden of production. *See, e.g.*, *Johnson v. Hall*, No. 2:11-cv-2817-GEB, 2012 WL 1604715, at *3 (E.D. Cal. May 7, 2012) (holding that plaintiff's allegation that architectural barriers "are readily removable" and that he sought injunctive relief to remove all readily achievable barriers satisfied his burden); *Johnson v. Beahm*, No. 2:11-cv-294-MCE, 2011 WL 5508893, at *3-4 (E.D. Cal. Nov. 8, 2011) (holding same because plaintiff's allegations were taken as true on default); *see also Sceper v. Trucks Plus*, No. CIV S-09-0801-GEB, 2009 WL 3763823, at *4 (E.D. Cal. Nov. 3, 2009) (granting default judgment on plaintiff's ADA claim even though plaintiff did not specifically allege that removal of barriers was readily achievable , but instead alleged that defendants were required to remove architectural barriers). Defendants, for their part, have failed to meet their burden of proving otherwise because they failed to appear and defend.

The Court therefore concludes that Plaintiffs have established the fifth and final element of their Title III discrimination claim, but would limit injunctive relief to only those repairs alleged or shown to be readily achievable. Accordingly, Plaintiffs have stated a meritorious claim under the ADA as to the following barriers: (1) the lack of strike side clearance for the entrance door; (2) the arrangement of the dining tables, which block entrance to the unisex restroom; (3) the restroom door's knob; (4) the restroom door's lock; and (5) the restroom door, which opens into the clear floor space of the water closet.

> b.   *Discrimination Under the California Unruh Civil Rights Act*

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability, [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments

1    of any kind whatsoever." Cal. Civ. Code § 51(b). Unlike the ADA, the Unruh Act permits the

2    recovery of monetary damages, in the form of actual and treble damages or statutory damages of

3    $4,000 per violation. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (citing Cal. Civ. Code

4    § 52(a)); *see also Vogel*, 992 F. Supp. 2d at 1011 (same). A violation of the ADA necessarily

5    violates the Unruh Act, *see* Cal. Civ. Code § 51(f), and, although required if not based on an ADA

6    violation, "no showing of intentional discrimination is required where the Unruh Act violation is

7    premised on an ADA violation." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847

8    (9th Cir. 2004). Because Plaintiffs' Complaint alleges a cognizable ADA claim, it also properly

9    pleads that Defendants violated the Unruh Act.

10                    c.    *Violations of California Health and Safety Code § 19955*

11           Plaintiffs also seek injunctive relief under California Health and Safety Code Section

12    19955. (Dkt. No. 33 at 17.) Section 19955 insures that privately funded public accommodations

13    in California comply with Government Code Section 4450's requirement that "all buildings,

14    structures, sidewalks, curbs, and related facilities" constructed with government funding " be

15    accessible to and usable by persons with disabilities." Cal. Health & Safety Code § 19955; Cal.

16    Gov't Code § 4450. Section 19959 extends Section 4450's requirements to every non-exempt

17    public accommodation built prior to July 1, 1970, "when any alterations, structural repairs or

18    additions are made to such public accommodation." Cal. Health & Safety Code § 19959. A

19    private right of action exists under Part 5.5 of the California Health and Safety Code to seek

20    injunctive relief for violations of these provisions. *See Donald v. Café Royale, Inc.*, 218 Cal. App.

21    3d 168, 183 n.7(1990) ("[A]n individual aggrieved or potentially aggrieved by a violation of

22    Government Code section 4450 and Health and Safety Code section 19955 may bring an

23    injunction action under Civil Code section 55."); *see also Moeller v. Taco Bell Corp.*, No. C02-

24    05849 MJJ, 2007 WL 2301778, at *16-17 (N.D. Cal. Aug. 8, 2007).

25           Mr. Sarantschin's report identifies two features of the Business that violate the 2013

26    California Building Code ("CBC") with no corresponding violation of the ADAAG: the height of

27    the hand dryer and the soap dispenser in the Business's unisex restroom. Plaintiffs alleged the

28    hand dryer height violation for the first time in their motion for default. (*Compare* Dkt. No. 33 at

United States District Court
Northern District of California

18

32, *with* Dkt. No. 1 ¶ 24 (listing six problems with the Business's restrooms, but not hand dryer height).)  Neither Plaintiff encountered the barrier.  (*See* Dkt. Nos. 28, 29 (making no reference to the hand dryer).)  Also, Plaintiffs never moved to amend their Complaint to include this violation.  It is well established that, in the context of motions for summary judgment, the Court does not consider additional architectural barriers listed in the plaintiff's expert report for the first time and not alleged in the Complaint.  *See Oliver*, 654 F.3d at 906; *see also Moeller*, 966 F. Supp. 2d at 904 (referencing the *Oliver* decision as an "unambiguous . . . rule of pleading" in ADA cases).  Thus, "a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere."  *Id.* at 909.  This reasoning applies here where, nearly two years into the litigation, Plaintiffs have raised the violation for the first time in a motion for default judgment.  Accordingly, the Court will only address the claim regarding the soap dispenser height and not the claim regarding the hand dryer height.

Mr. Sarantschin avers that the soap dispenser's distance from the floor exceeds that allowed under § 11B-603.5 of the 2013 California Business Code, and that the ADA defers to state building codes that require greater accessibility than the ADA.  (Dkt. No. 26 ¶ H.)  Plaintiffs incorporate their other allegations regarding the Business and assert that "portions of the [Business] and/or of the building(s) were constructed and/or altered after July 1, 1970, and substantial portions of the [Business] and/or the building(s) had alterations, structural repairs, and/or additions made to such public accommodations after July 1, 1970, thereby requiring said restaurant and/or building to be subject to the requirements of Part 5.5, § 19955 . . . of the Health & Safety Code upon such alteration, structural repairs or additions per Health & Safety Code § 19959."  (Dkt. No. 1 ¶¶ 73, 75.)  While this allegation is largely boilerplate, courts within the Ninth Circuit have found such allegations sufficient to plead a violation of Section 19959 for the purposes of default judgment.  *See Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO, 2014 WL 1665034, at *4 (E.D. Cal. Apr. 24, 2014) (finding "largely boilerplate" claim as to violation of Section 19955 nonetheless sufficiently pled for motion for default judgment); *Moore v. Ruiz*, No. 1:11-cv-2159 LJO, 2012 WL 3778874, at *4 (E.D. Cal. Aug. 31, 2012) (same).  Accordingly,

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    Plaintiffs have asserted a violation of California Health and Safety Code Section 19955 as to the

2    height of the soap dispenser.

3               d.        Conclusion Regarding the Second and Third *Eitel* Factors

4          Taking the facts alleged in the Complaint as true, the Court concludes that Plaintiffs have

5    stated a claim for disability discrimination under the ADA, the Unruh Act, and Health and Safety

6    Code Section 19955.  The second and third *Eitel* factors therefore favor entry of default judgment

7    on these claims as to (1) the lack of strike side clearance for the entrance door; (2) the arrangement

8    of the dining tables; (3) the restroom door's knob; (4) the restroom door's lock; (5) the restroom

9    door, which opens into the clear floor space of the water closet; and (6) the soap dispenser's

10   distance from the floor.  These factors do not favor entry of default judgment as to Plaintiffs'

11   ADA, Unruh Act, and Health and Safety Code Section 19955 claims regarding (1) the hand

12   dryer's height; (2) the lack of accessibility signage; (3) the excessive door pressure at the entrance

13   and restroom door; and (4) the height of the service counter.

14           3.     *Sum of Money at Stake*

15         The third *Eitel* factor balances the amount of money at stake in the matter against the

16   seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471.  Default judgment is disfavored

17   where the sum of money is disproportionately large or unreasonable compared to the defendant's

18   conduct.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594 JSW, 2007 WL 1545173,

19   at *12 (N.D. Cal. May 29, 2007) (citation omitted).

20         Here, Plaintiffs seek a total monetary judgment of $35,477.06: $8,000 in statutory damages

21   per Plaintiff—the statutory minimum under the Unruh Act for each visit that each Plaintiff made

22   to the Business—for a total of $16,000, plus $19,447.06 in attorneys' fees and costs.  (Dkt. No. 33

23   at 3.)  In addition, the requested judgment necessarily includes the cost that Defendants would

24   incur to comply with the injunction.  "Although not a form of monetary recovery, the injunction

25   will undoubtedly require that [Defendants] spend money to remove barriers" at the Business.

26   *Vogel*, 992 F. Supp. 2d at 1012.  However, as discussed above, the ADA limits a defendant's

27   liability only to *readily achievable* removal of barriers, which "caps a defendant's liability."  *Id.*

28   Thus, any additional expense associated with compliance with the injunction is reasonable in light

1    of Defendants' conduct.

2         Other courts have awarded financial liabilities on defendants in disability discrimination

3    cases on default judgment.  Plaintiffs' request is on the high end of ADA access barrier cases.

4    *See, e.g.*, *Johnson v. McMahan Kays, LLC*, No. 2:14-cv-1111-KJM, KJN, 2015 WL 966244, at *4

5    (E.D. Cal. Mar. 4, 2015) (finding $11,990.00 not "so large or excessive as to militate against the

6    entry of default judgment"); *Moore*, 2014 WL 1665034, at *4 (noting that $10,227.50 in statutory

7    damages, costs, and attorneys' fees "is not a large amount of money, nor does it seem

8    unreasonable in light of the allegations" of ADA architectural-barrier discrimination); *Vogel*, 992

9    F. Supp. 2d at 1012 (noting that a $13,739.20 award of statutory damages and attorneys' fees is

10   "neither too large nor to[o] unreasonable"); *Moore v. Cisneros*, No. 1:12-cv-00188 LJO SKO,

11   2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012) (noting that a $10,119.70 default judgment

12   damages award was "not a relatively large sum of money, nor does it appear unreasonable in light

13   of the allegations in the complaint"); *Sceper Trucks*, 2009 WL 3763823, at *7-9 (reducing fees

14   from $14,475 to $12,550, which it still deemed to be on the high end, though not unreasonable);

15   *Chapman*, 2007 WL 2462084 at *2-6 (reducing fees from $70,608.80 to $47,912.04); *Sanford v.*

16   *GMRI, Inc.*, No. CV.S 04 1535 DFL, 2005 WL 4782697, at *1-5 (E.D. Cal. Nov. 14, 2005)

17   (reducing fees from $18,268.09 to $8,132.67).  One court in this District recently found

18   $33,873.60 to be reasonable for an ADA access barrier case involving two plaintiffs, finding it

19   "fair to assess the requested judgment amount on a per-plaintiff basis." *GD Liquor & Food*, 2015

20   WL 4967255, at *4.  Thus, that court determined that the requested $16,936.80 per plaintiff was

21   reasonable especially given that the plaintiffs stipulated to forego $4,000 each, "a third of the

22   amount in statutory damages to which they could otherwise lay claim." *Id.*  So it is here.  The

23   requested judgment yields $17,738.53 per plaintiff.  While this is on the higher end of ADA access

24   barrier cases, courts have found similar amounts reasonable. *See, e.g.*, *id.*  And the deviation here

25   is largely due to the requested attorneys' fees and costs, which the Court will more closely

26   scrutinize in detail below.

27        In sum, the Court does not find that the overall sum of money at stake in this litigation is

28   so large or excessive as to militate against entry of default judgment.  Thus, this factor favors entry

United States District Court
Northern District of California

21

United States District Court
Northern District of California

of default judgment as well.

### 4.     *Possibility of Dispute Concerning Material Facts*

The next *Eitel* factor considers the possibility of disputes concerning material facts.  *Eitel*, 782 F.2d at 1471-72.  As discussed, Plaintiffs have adequately alleged disability discrimination in violation of the ADA and the Unruh Act and Health & Safety Code by identifying architectural barriers that are readily removable, and Defendants' failure to appear effectively deems admitted these facts.  *See TeleVideo Sys.*, 826 F.2d at 917-18.  On these pleadings, there appears to be no potential dispute concerning material facts.  In short, since Plaintiffs' factual allegations are presumed true and Defendants have not opposed their motion, no factual disputes exist that would preclude entry of default judgment.  Thus, this factor also favors entry of default against Defendants.

### 5.     *Excusable Neglect*

The next *Eitel* factor considers whether the defendant's default is due to excusable neglect. *Eitel*, 782 F.2d at 1472.  Here, there is no indication that excusable neglect is to blame for Defendants' failure to appear and defend themselves.  To the contrary, the record indicates that Defendants were properly served with the Summons and Complaint, were aware of the claims, and their agent for service of process, Mr. Musleh, even discussed the possibility of settlement with Plaintiffs' counsel.  (Dkt. Nos. 5, 11; Dkt. No. 34-6 at 4.)  Courts in this District find that where preliminary settlement discussions occur following service of the complaint, there is no indication that the defendant's default is due to excusable neglect.  *See, e.g.*, *Heidorn v. BDD Mktg. & Mgmt. Co.*, No. C-13-00229 JCS, 2013 WL 6571629, at *9 (N.D. Cal. Aug. 19, 2013) (finding no excusable neglect where the defendant received the complaint and contacted plaintiff to discuss the possibility of settlement); *Ortega v. Griggs & Assocs. LLC*, No. 5:11-CV-02235-EJD, 2012 WL 2913202, at *4 (N.D. Cal. July 13, 2012) (finding no excusable neglect where the defendant was properly served and participated in preliminary settlement discussions but "cut off contact once a settlement could not be reached" and failed to appear and defend).  So it is here.  Thus, the record before the Court does not suggest that Defendants' default was due to excusable neglect, which weighs in favor of entry of default judgment.

1          6.      *Policy Favoring Decision on the Merits*

2          Finally, the last *Eitel* factor reflects the policy that generally disfavors default judgment

3    because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782

4    F.2d at 1472.  Despite this general policy, "because a discretionary standard is applied, default

5    judgments are more often granted than denied." *Webb v. Indigenous Global Dev. Corp.*, C-04-

6    3174 MJJ, 2005 WL 1200203, at *5 (N.D. Cal. May 16, 2005) (internal quotation marks and

7    citation omitted).  Although this factor weighs against default, it is not alone dispositive nor does

8    it weigh substantially against granting default judgment given the impossibility of deciding a case

9    on its merits when the defendant fails to answer.  *See Willamette Green Innovation Ctr.*, 2014 WL

10   5281039, at *13 (citation omitted).

11                                            *   *   *

12         The great majority of the *Eitel* factors weigh in favor of granting default judgment on

13   Plaintiffs' ADA, Unruh Act and Health & Safety Code architectural-barrier discrimination claims

14   regarding the architectural access barriers at the entry, inside the restaurant, and in the unisex

15   bathroom.  The Court therefore recommends that default judgment be entered in favor of Plaintiffs

16   and against Defendants regarding (1) the lack of strike side clearance for the entrance door; (2) the

17   arrangement of the dining tables; (3) the restroom door's lock (4) the restroom door's knob; (5)

18   the restroom door, which opens into the clear floor space of the water closet; and (6) the soap

19   dispenser's distance from the floor.

20   **C.     Relief**

21         Having determined that the motion should be granted, the Court turns to the matter of the

22   relief to which Plaintiffs are entitled.  In their motion for default judgment, Plaintiffs seek

23   monetary relief—in the form of statutory damages on their Unruh Act claim—as well as equitable

24   relief—in the form of an injunction.  In addition, Plaintiffs seek attorneys' fees and costs pursuant

25   to the ADA and the Unruh Act.  (*See* Dkt. No. 33 at 3, 27.)  Upon entry of default, defaulting

26   defendants are not deemed to have admitted facts alleged in the complaint concerning damages..

27   *TeleVideo Sys.*, 826 F.2d at 917-18.  To the contrary, the plaintiff is required to prove up the

28   amount of damages sought.  *Id.*

United States District Court
Northern District of California

23

1           1.      *Statutory Damages*

2           Plaintiffs seek $8,000 in statutory damages each under the Unruh Act: one $4,000 award

3   each for denial of access and another $4,000 award each for a single deterrence occasion.  (Dkt.

4   No. 33 at 24-26.)  The Unruh Civil Rights Act provides for, among other things, a minimum

5   statutory damages amount of $4,000 for each occasion on which a person was denied equal access.

6   Cal. Civ. Code § 52(a); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000); *see*

7   *also Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides

8   for statutory damages up to a maximum of three times the actual damages but no less than

9   $4[,]000 for each instance of discrimination").  "To recover statutory damages, a plaintiff need

10  only show that he was denied full and equal access, not that he was wholly excluded from

11  enjoying defendant's services."  *Vogel*, 992 F. Supp. 2d at 1014 (citations omitted).  This can

12  include incidents of deterred access.  *See* Cal. Civ. Code § 55.56(b) ("A plaintiff is denied full and

13  equal access only if the plaintiff personally encountered the violation on a particular occasion, or

14  the plaintiff was deterred from accessing a place of public accommodation on a particular

15  occasion."); *see, e.g.*, *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1076 (N.D. Cal. 2014)

16  ("Both [the California Disabled Persons Act and the Unruh Act] restrict damages recovery to

17  situations where the plaintiff personally encountered the violation on a particular occasion, or the

18  plaintiff was deterred from accessing a place of public accommodation on a particular occasion.")

19  (internal quotations omitted); *Yates v. Vishal Corp.*, 2013 WL 6073516, at *3 (N.D. Cal. Nov. 18,

20  2013) ("Under section 55.56, multiple awards may accrue to plaintiffs . . . . for each time a

21  plaintiff visits (or is deterred from visiting) a non-complaint establishment[.]").

22          Here, Plaintiffs allege that they visited the Business on December 13, 2012, February 28,

23  2013, and May 23, 2013.  (Dkt. No. 1 ¶ 2.)  They state that they encountered access barriers on

24  each of these occasions that not only interfered with their access to and enjoyment of the

25  Business's services, but led to physical and emotional discomfort.  (*Id.*)  They also allege that on

26  May 23, 2013, they were deterred from returning to the Business, but would have returned had the

27  barriers been removed.  (*Id.* ¶¶ 25, 27; Dkt. No. 33 at 12.)  These allegations show four separate

28  violations of the Unruh Act, which would result in $16,000 in statutory damages per plaintiff.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Although Plaintiffs have established that they suffered four violations of the Unruh Act, Plaintiffs

2    have stipulated to an award of only $8,000 each for one incident of denied access and one incident

3    of deterrence.  (Dkt. No. 27.)  Thus, Plaintiffs forgo claims of $8,000 each for the second and third

4    incidents of denied access.

5         The Court must consider whether to reduce the award because "[t]he California Supreme

6    Court has stated in dicta that there may be a point at which statutory damages for each offense will

7    be so high that equity and constitutional constraints cabin a defendant's liability under the Unruh

8    Act." *Vogel*, 992 F. Supp. 2d at 1014 (citing *Angelucci v. Century Supper Club*, 41 Cal. 4th 160,

9    179-80 (2007)).  Plaintiffs' stipulation to reduce damages compels the opposite conclusion—that

10   the statutory damages are appropriate.  Indeed, courts frequently award damages of even greater

11   magnitude.  *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1015 (awarding the plaintiff $12,000 in statutory

12   damages for three visits to the business); *Feezor v. Del Taco, Inc.*, 431 F. Supp. 2d 1088, 1091

13   (S.D. Cal. 2005) ("[T]he Court finds Plaintiff is entitled to the statutory minimum of $12,000—

14   $4,000 for each time he patronized the Restaurant."); *Hubbard*, 433 F. Supp. 2d at 1170 ("The

15   Court concludes that Plaintiffs are entitled to statutory damages of $4,000 under Section 52 for

16   these three visits for an award of $12,000 to each Plaintiff totaling $24,000.").  The Court

17   therefore recommends awarding Plaintiffs $8,000 each in statutory damages.

18        2.    *Injunctive Relief*

19        Plaintiffs also seek injunctive relief under the ADA, Unruh Act, and Health and Safety

20   Code § 19955 compelling Defendants to remove the entrance and restroom-related architectural

21   barriers at the Business.  (Dkt. No. 33 at 24-26.)  A court may grant injunctive relief for violations

22   of the Unruh Act under Section 52.1(b).  To be entitled to injunctive relief under the ADA,

23   Plaintiffs must show that Defendants violated the ADA Accessibility Guidelines.  *See* 42 U.S.C.

24   § 12188(a)(2).  "In the case of violations [of the accessibility provisions] of this title, injunctive

25   relief shall include an order to alter facilities readily accessible to and usable by individuals with

26   disabilities[.]"  *Id.*; *see also Vogel*, 992 F. Supp. 2d at 1015 (citations omitted).  Notably, a

27   plaintiff need not satisfy the prerequisites generally needed for injunctive relief since "the standard

28   requirements for equitable relief need not be satisfied when an injunction is sought to prevent the

violation of a federal statute which specifically provides for injunctive relief." *Moeller*, 816 F. Supp. 2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010)).  Injunctive relief is therefore proper whenever architectural barriers at a defendant's establishment violate the ADA and the removal of the barriers is readily achievable.  *See, e.g.*, *Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011); *Vogel*, 992 F. Supp. 2d at 1015 (citations omitted); *Sceper*, 2009 WL 3763823, at *4.

As discussed above, Plaintiffs have stated certain viable Title III discrimination claims. There are various access-related barriers at the Business that violate the ADAAG Guidelines and state regulations, and the removal of these barriers is "readily achievable" so long as Defendants have the ability to make the physical changes necessary to remove the specific barriers about which Plaintiffs complain.  *See* 42 U.S.C. § 12181(9).  Injunctive relief compelling Defendants to modify the Business's entrance, the arrangement of its chairs, the restroom's locks and handles, and the height of its soap dispensers—to the extent each Defendant has the legal right to do so under the joint venture agreement and state law—so that the Business is readily accessible to and usable by individuals with disabilities is therefore appropriate.  The undersigned therefore recommends enjoining Defendants to remove the architectural barriers for which Plaintiffs are entitled to default judgment.  Specifically, Defendants must install an automatic door opener, rearrange the dining tables, install compliant door hardware and locking mechanisms on the unisex restroom door, change the direction of the door swing, and lower the soap dispenser's height in the unisex restroom—again, only to the extent that Defendants have control over these aspects of the property under the joint venture agreement and state law and their removal is readily achievable.

   3.   *Attorneys' Fees*

      a.   Legal Standard

Plaintiffs request $16,700 in attorneys' fees pursuant to both the ADA and the Unruh Act. (Dkt. No. 33 at 3.)  Both the ADA and the Unruh Act entitle prevailing plaintiffs to attorneys' fees.  42 U.S.C. § 12205; Cal. Civ. Code § 52(a). The ADA provides that a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205; *see also* 28 C.F.R. § 36.505.  "A 'prevailing' party who may recover

United States District Court
Northern District of California

1    attorneys['] fees [and costs] under the ADA is one who secures an enforceable judgment on the

2    merits or a court-ordered consent decree, or who has been rewarded some relief by the Court."

3    *Sceper*, 2009 WL 3763823, at *6 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of*

4    *Health & Human Res.*, 532 U.S. 598, 604 (2001)).  As the Court has determined that Plaintiffs are

5    entitled to default judgment in their favor on the ADA claim, they are therefore a prevailing party

6    eligible for attorneys' fees under that statute.[7]  *See, e.g.*, *Sceper*, 2009 WL 3763823, at *6-7.

7        Plaintiffs are entitled to attorneys' fees under the ADA using the "lodestar" measure,

8    which is obtained by multiplying the number of hours reasonably expended on litigation by a

9    reasonable hourly rate.  *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262, 1262 n.5 (9th Cir.

10   1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *see also, e.g.*, *Doran v. Corte Madera*

11   *Inn Best Western*, 360 F. Supp. 2d 1057, 1060-63 (N.D. Cal. 2005) (using the lodestar calculation

12   to determine attorneys' fees in an ADA case). "Once the court has fixed the lodestar, it may

13   increase or decrease that amount by applying a positive or negative 'multiplier' to take into

14   account a variety of other factors, including the quality of the representation, the novelty and

15   complexity of the issues, the results obtained, and the contingent risk presented."  *Thayer v. Wells*

16   *Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (citation omitted).

17              b.    Analysis

18       Plaintiffs seek attorneys' fees for all of the work done on this case, from initial

19   investigation of claims through drafting the instant motion for default judgment.  (*See* Dkt. No. 33

20   at 3.)  In total, Plaintiffs seek $16,700.00 in attorneys' fees.

21                   i.    Reasonable Hourly Rate

22       The first step in the lodestar analysis requires the court to determine a reasonable hourly

23   rate for the fee applicant's services.  This determination involves examining the prevailing market

24   rates in the community charged for similar services by lawyers of reasonably "comparable skill,

25   experience, and reputation."  *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1161 (N.D. Cal.

26

27   ───────────────

[7] Because fees may be awarded under the ADA, the Court will not address Plaintiffs' alternative
request for fees under the Unruh Act, which are also within the court's discretion.  *See* Cal. Code
28   Civ. Proc. § 52(a) (providing that individuals liable for violating the Unruh Act are liable for
actual damages and "any attorney's fees that may be determined by the court").

United States District Court
Northern District of California

1    2012) (internal quotation marks and citations omitted); *see also Camacho*, 523 F.3d at 979.  The

2    "relevant community" for the purposes of the lodestar calculation is the district in which the

3    lawsuit proceeds.  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  "The fee applicant has the

4    burden of producing satisfactory evidence . . . that the requested rates are in line with those

5    prevailing in the community[.]"  *Jordan*, 815 F.2d at 1263.  In addition to affidavits from the fee

6    applicant himself, other evidence of the prevailing market rate may include affidavits from other

7    area attorneys or examples of rates awarded to counsel in previous cases.  *See Cotton*, 889 F.

8    Supp. 2d at 1167 (citation omitted).  However, the actual rate that the fee applicant charged is not

9    evidence of the prevailing market rate.  *Id.* (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73

10   F.3d 895, 908 (9th Cir. 1995) (quotation omitted)).

11           Plaintiffs assert that the fee award in this case should be based on a rate of $500 per hour.

12   (Dkt. No. 33 at 31.)  Plaintiffs contend that this billing rate is appropriate based on Plaintiffs'

13   counsel's "education, knowledge and thirty-eight (38) years of experience as a litigation strategist

14   and trial lawyer[.]"  (*Id.*)  In a sworn declaration in support of the motion for default, Plaintiffs'

15   attorney, Thomas E. Frankovich, elaborates on his record of more than "twenty-five (25) jury

16   trials, fifteen (15) bench trials and hundreds of arbitrations and mediations" and emphasizes that

17   the last twenty-one years of his practice have "nearly exclusively focused on protecting the civil

18   rights of persons" to access to public accommodations.  (Dkt. No. 24 at 4-5.)  Mr. Frankovich has

19   also published two articles in his field, given lectures to several disability groups, and been

20   profiled several times relating to his work in the field of disability access.  (Dkt. No. 24 ¶¶ A-C.)

21   In further support of his rate, Mr. Frankovich asserts that his usual billing rate is $575 an hour, but

22   that he has decreased that charge to $500 for this case.  (Dkt. No. 24 at 7.)  Mr. Frankovich does

23   not point to the hourly rate awarded other attorneys in the Northern District; instead, he points to

24   previous cases where his request for $500 an hour was found to be reasonable.  (*Id.*)  *See* Order

25   Granting in Part and Denying in Part Plaintiff's Motion for Attorney's Fees, Yates v. Vishal Corp.,

26   No. 3:11-cv-00643-JSC (N.D. Cal. Feb. 4, 2014), ECF No. 46 (hereinafter "Yates Order") (finding

27   Mr. Frankovich's rate of $500 per hour "reasonable based on his expertise and the fact that he has

28   been practicing law since 1977"); Order for Reassignment; Report & Recommendation to Grant

United States District Court
Northern District of California

Plaintiffs' Motion for Default Judgment, Ascencio v. Adru Corp., No. 3:12-cv-04884-WHA (N.D. Cal. Dec. 19, 2013), ECF No. 15 (finding Mr. Frankovich's $500 hourly rate reasonable "[b]ased on [his] declaration and the court's knowledge of billing rates in the San Francisco area").

The Court has conducted its own review of hourly rate determinations in other ADA access-barrier discrimination cases and found that other courts in this District have determined that rates as high as $500 are appropriate in disability access cases for attorneys with similar length of experience. *See, e.g.*, *Hernandez v. Taqueria El Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *4-6 (N.D. Cal. Apr. 30, 2014) (awarding fees at hourly rates ranging from $425 to $645 for attorneys with over 20 to 38 years of experience who exclusively try disability access cases); *Ascenscio v. ADRU Corp.*, No. C 12-04884 WHA, 2014 WL 204212, at *10 (N.D. Cal. Jan. 6, 2014) (awarding Mr. Frankovich $500 per hour rate in disability access case upon default judgment); *Moralez v. Whole Foods Market, Inc.*, No. C 12-01072 CRB, 2013 WL 3967639, at *3 (N.D. Cal. July 31, 2013) (awarding fees at hourly rates ranging from $425 to $645). Based on the fees regularly awarded in comparable actions in this District, and the fact that Plaintiffs' counsel has significant experience in this particular field of law, the Court concludes that the $500 requested rate is reasonable.

ii.     Reasonableness of Time Spent

Plaintiffs' counsel avers that he has spent 33.4 hours working on this case over the past two years. (Dkt. No. 24 at 7.) At the outset, the Court addresses an inexplicable 7.6 hours that appear at the end of Mr. Frankovich's timesheets. Unlike all other entries in the time sheet, the 7.6 hours is not paired with a date or accompanying description of work performed. Instead, it hovers alone between the final descriptive entry and the total hours billed. (Dkt. No. 34-6 at 7.) This time will be struck from the hours requested.

Next, while the Court appreciates that Mr. Frankovich voluntarily reduced his time for certain tasks, it nonetheless must reduce entries that appear excessive or enigmatic. *Hensley*, 461 U.S. at 433-34. On April 8, 2014, Mr. Frankovich billed 0.3 hours for reviewing the clerk's entry of Default against the Lada Group—a one sentence, one page document—and "advising staff to mail copy to each defendant." (Dkt. No. 34-6 at 4.) This time is reduced to 0.1. Also, on August

29

1   17, 2015, Mr. Frankovich billed 0.4 hours for "[r]eview[ing] status of Prove Up." (Dkt. No. 34-6

2   at 6.)  The Prove Up appears to refer to Mr. Frankovich's own declaration, and it is unclear why

3   0.4 hours are needed to update oneself as to the status of his own work.  The Court also reduces

4   this time to 0.1 hours.

5          Further, the Court finds that some tasks in the time sheet include work that could and

6   should have been performed by a non-attorney, not the senior and sole attorney on the matter, and

7   are therefore not billable.[8]  The Ninth Circuit has emphasized that "[i]t simply is not reasonable

8   for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could

9   perform at a much lower cost."  *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th

10   Cir. 1992), *opinion vacated in part on denial of reh'g on other grounds*, 984 F.2d 345 (9th Cir.

11   1993) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate,

12   regardless of who performs them[.]") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10

13   (1989)).  As other courts in this District have already reminded Plaintiffs' counsel in other cases,

14   such work includes compiling or attaching exhibits.  *See* Yates Order at 6 (noting that Mr.

15   Frankovich's time entry for "'attach[ing] the . . . expert report'" could have easily been

16   accomplished by a non-attorney"); *see also Doran*, 360 F. Supp. 2d at 1062 (noting some of Mr.

17   Frankovich's billed tasks "could easily be accomplished by paralegals").  Accordingly, the Court

18   reduces time billed for the following entries to remove time billed for attaching or compiling

19   exhibits: on October 1, 2013, from 0.5 hours to 0.4 hours; on March 28, 2014, from 0.8 to 0.7; on

20   February 25, 2015, from 1.8 to 1.6 hours; and on March 3, 2015, from 1.2 hours to 1 hour.  (*See*

21   Dkt. No. 34-6 at 2-6.)   This subtracts an additional 0.6 hours from the total time billed.

22          After subtracting a total of 8.7 hours, the new total is 24.7 hours.  This total falls within the

23   hours found reasonable by courts in similar cases. *See, e.g.*, *Gd. Liquor & Food*, 2015 WL

24

25   _____

26   [8] Mr. Frankovich describes the timesheet as an "Itemization of Attorney and Legal Assistant
    Time" and "Itemization of Attorneys & Paraprofessional Time."  (Dkt. No. 34 at 8; Dkt. No. 34-6

27   at 2-7.)  However, the sub-heading indicates that the time is for Mr. Frankovich alone.  Further,
    the document does not separate out time or work by his employees as opposed to himself.  And
    finally, he later bills separately for the work of his Legal Assistants and Word Processors: 4.2

28   hours for P. Maupin and 9.8 hours for A. Cooper.  (Dkt. No. 34-5 at 2.)  The Court therefore
    assumes the clerical tasks in the timesheet are attributable to Mr. Frankovich.

United States District Court
Northern District of California

4967255, at *5 (finding 30.2 hours reasonable for attorneys' fees in motion for default judgment in ADA case regarding access barriers with two plaintiffs); *Org. for the Advancement of Minorities with Disabilities v. Pac. Heights Inn*, No. C-04-03368 JSW, 2006 WL 2560754, at *9-10 (N.D. Cal. Jan. 20, 2006) (finding 33 hours reasonable).  Also, while the total number of hours is significant, Mr. Frankovich appears to have worked efficiently and billed minimally on the case, billing just 1.8 hours to draft the complaint and waiving fees for various tasks.  In particular, the Court notes that Mr. Frankovich reduced the hours billed for drafting the motion for default judgment from 3.9 to 1.8 hours.  Especially in view of these examples, and with the reductions set forth above, the total time Mr. Frankovich billed in this case is reasonable.

In sum, the Court finds the total of 24.7 hours worked reasonable and will award fees for this adjusted amount.

iii. Total Attorneys' Fees

Plaintiffs have not sought an adjustment to the lodestar amount, nor does the Court find a multiplier appropriate here.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (noting that a "strong presumption" exists that the lodestar figure represents a "reasonable fee" and therefore it should only be enhanced or reduced in "rare or exceptional cases" (internal quotation marks omitted)).  Absent a multiplier, the Court concludes that the lodestar calculation in this case is a total of 24.7 hours of work billed at a rate of $500 per hour for a total of $12,350.  This amount is well within awards in other ADA access barrier cases on default judgment.  *See, e.g.*, *GD Liquor & Food*, 2015 WL 4967255, at *5 (awarding attorneys' fees in the amount of $15,696); *Org. for Advancement of Minorities with Disabilities*, 2006 WL 2560754, at *4 (awarding attorneys' fees in the amount of $12,375).  The Court therefore recommends awarding Plaintiffs' counsel $12,350 in attorneys' fees.

iv. *Reasonableness of Costs*

Plaintiffs seek $749.31 for costs and litigation expenses and $1,437.75 in expert's fees.[9]

---

[9] Plaintiffs initially sought $1,309.31 for costs, including a request for an additional $560 in fees for the work of his legal assistants/word processors; however, Plaintiffs later withdrew the request. (*See* Dkt. No. 36.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (Dkt. No. 16 at 32.)  As part of the reasonable attorneys' fee, the ADA also allows a prevailing

2    plaintiff to recover "litigation expenses, and costs."  42 U.S.C. § 12205; *see also Lovell v.*

3    *Chandler*, 303 F.3d 1039 (9th Cir. 2002) (noting that "litigation expenses include items such as

4    expert witness fees, travel expenses, etc." (citation omitted)); 28 C.F.R. § 36.505 (outlining

5    available costs).  Plaintiffs seek $749.31 in costs to cover: the $400.00 court filing fee;,$9.50 for

6    the location of Ownership Information for the Business, $201 for service of process, $115.50 for

7    copies, $4 for faxes, and $19.31 for postage.  (Dkt. No. 34-5 at 2.)  Such costs are reasonable and

8    regularly awarded, and as such the Court recommends awarding the requested costs in their

9    entirety.

10          Plaintiffs also seek $1,437.75 in expert's fees.  Expert fees are recoverable litigation

11   expenses under the ADA.  *See Gutierrez v. Leng*, No. 1:14-cv-01027-WBS, 2015 WL 1498813, at

12   *11 (E.D. Cal. Mar. 31, 2015) (noting ADA's statutory provisions "provide direct authority for the

13   award of expert witness fees as litigation expenses" before granting $603.75 for site inspection

14   and report) (citing *Lovell*, 303 F.3d at 1058).  The Court similarly concludes that Plaintiffs are

15   entitled to an award to reimburse Mr. Sarantschin's inspection of the Business.  Mr. Sarantschin

16   spent a total of 5.75 hours, at $250 an hour, traveling to and from the Business, inspecting the

17   Business, preparing his report, and communicating with Plaintiffs' counsel.  (Dkt. No. 36-1 at 2.)

18   The fees are not excessive in relation to fees granted in other cases.  *See, e.g., Moore v. E-Z-N-*

19   *Quick*, 2014 WL 1665034 (granting $1,315 in costs that includes expert site inspection); *Yates*,

20   2014 WL 572528, at *7 (granting $5,498 in costs that include expert's fees; *Doran*, 360 F. Supp.

21   2d at 1060, 1062 (granting $3,070 in expert fees alone).

22          In sum, the Court recommends awarding $2,187.06 for costs and the expert's fee.

23                                        **CONCLUSION**

24          For the reasons explained above, the Court recommends granting Plaintiffs' motion for

25   default judgment on their ADA and Unruh Act architectural-barrier disability discrimination

26   claims as to (1) the lack of strike side clearance for the entrance door; (2) the arrangement of the

27   dining tables; (3) the restroom door's lock (4) the restroom door's knob; (5) the restroom door,

28   which opens into the clear floor space of the water closet; and (6) the soap dispenser's distance

from the floor.  The Court further recommends that Plaintiffs be awarded $8,000 each in statutory damages and $14,537.06 in attorneys' fees and costs.  In addition, the Court recommends that an injunction be issued requiring Defendants to remove the above-described barriers associated with the Business to the extent removal is "readily achievable" and insofar as Defendants have legal right and authority to make such changes to the property.  A proposed judgment is attached.

Plaintiffs shall serve a copy of this Report and Recommendation on Defendants within three business days from the filing date of this report and recommendation and shall file a proof of service with the Court.  Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the district court's ultimate Order.

**IT IS SO ORDERED.**

Dated:  October 6, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge